IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 2:19-CR-51-KS-MTP

WADE ASHLEY WALTERS

<u>**O**RDER</u>

On September 24, 2019, the Government filed an 83-page, 37-count Superseding Indictment [8], in which they charged Defendant with various crimes related to a conspiracy to defraud health care insurance companies, including Tricare, by formulating, marketing, prescribing, and billing for fraudulent compounded medications. The Court described the charges in detail in its Order [44] of December 19, 2019.

On March 17, 2020, Defendant filed a Motion for a Multi-Division Jury Venire [83]. Defendant argued that media coverage and public knowledge of both this case and the prior prosecutions of his alleged coconspirators render it impossible to select a fair and impartial jury in either the Eastern Division or Southern Division of this Court, compromising his ability to receive a fair trial in either division. Defendant requested that the Court hold his trial in the Eastern Division, but that his jury pool come from the Western and Northern Divisions.

On April 15, 2020, the Court entered an Order [91] granting the motion in part and denying it in part. The Court granted the motion insofar as Defendant objected

to an Eastern Division jury, but the Court denied it in all other respects. The Court ordered that the trial of this matter would be held in the Southern Division, at the United States Courthouse in Gulfport, Mississippi, and that the jury *venire* would come from the Southern Division. The Court agreed with Defendant and the Government that it would be difficult, if not impossible, to seat an impartial jury in the Eastern Division, but the Court disagreed with Plaintiff's naked assertion that an impartial jury could not be seated in the Southern Division.

The Court outlined the methods it would employ to ensure that an impartial jury was seated, including but not limited to extensive *voir dire*, a larger *venire* than usual, and more alternates than usual. The Court also noted that a District-wide jury pool was impracticable in this case because 1) it would include jurors from the Eastern Division, and 2) given the expected length of the trial, a district-wide jury pool would make it even harder to seat a jury that would make it through the entire trial.

Finally, the Court noted that the United States Courthouse in Gulfport was much better suited to a trial of this length and scope than the Federal Building in Hattiesburg. First, Gulfport has a jury assembly room, and Hattiesburg does not. This has numerous practical implications. In Hattiesburg, jurors enter the courthouse through the same door as attorneys, parties, and witnesses; they ride the same elevators, use the same stairwells, and park in the same parking lot. Also, the hallways in Hattiesburg are substantially narrower, and the building is much

smaller. All of these issues make the risk of juror contact, contamination, and tampering substantially greater in Hattiesburg than in Gulfport.

In fact, this Court had to address a jury issue in a related case tried in Hattiesburg. *See United States v. Diaz*, 941 F.3d 729, 737-38 (5th Cir. 2019). Although the incident did not cause a mistrial, it easily could have. As it was, it wasted over half a day of everyone's time and money during the trial, plus what was expended on post-trial motions and appeal. Although the Court's prior order did not explicitly say so, all of these logistical issues are relevant to Rule 18's requirement that the Court consider the "prompt administration of justice." FED. R. CRIM. P. 18. The possibility of a mistrial – although typically desired by criminal defendants – is a relevant consideration. The Court must consider practical issues related to the adequacy of the facilities. *See, e.g. United States v. Roberson*, 124 F. App'x 860, 864-65 (5th Cir. 2005); *United States v. Harris*, 25 F.3d 1275, 1278 (5th Cir. 1994).

Nevertheless, Defendant argues that this Court should reconsider its prior order. First, Defendant argues that the Court abused its discretion by *sua sponte* moving the trial of this case to the Southern Division, rather than upon his motion. Defendant is mistaken. First, the Court's decision was not *sua sponte*. Defendant filed a motion that clearly implicated venue, despite his attempt to frame the issue as solely regarding the jury *venire*. The two issues are intertwined, and consideration of one necessarily requires consideration of the other. The question of moving the trial to another division had also come up numerous times in the Court's teleconferences

3

with the parties.

Regardless, "venue exists anywhere within the judicial district in which the crime was committed," and "there is no right to trial within a particular division in a district." *United States v. Weddell*, 800 F.3d 1404, 1406 (5th Cir. 1986); *see also United States v. Lipscomb*, 299 F.3d 303, 337-38 (5th Cir. 2002). Accordingly, "[w]ithin-district transfers of criminal cases are allowed under the law in this circuit," and they do not implicate the Sixth Amendment. *Lipscomb*, 299 F.3d at 338-39. Contrary to Defendant's hyperbolic assertions in briefing, the Court did not send him off to some "strange locality" far from his home or the location of his alleged crimes. The Court just moved the trial of this case to a better-equipped courthouse approximately 70 miles south of Hattiesburg, in a division where the Court can seat an impartial jury.

Defendant also argues that the Court did not consider the factors outlined in Rule 18, which governs intradistrict transfers. *Id.* at 340. The rule provides, in relevant part: "The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice." FED. R. CRIM. P. 18. "Although the text of Rule 18 refers only to convenience and prompt administration, the district court may consider other factors." *Lipscomb*, 299 F.3d at 340.

Overall, Gulfport is no less convenient for Defendant or the witnesses in this case than Hattiesburg, particularly when one considers the logistical concerns discussed above related to the courthouses. Gulfport is only 70 miles south of

Hattiesburg – an hour's drive if traffic conditions are favorable. This would hardly be a burden on Defendant and his attorneys. In fact, Defendant's lead attorney is in Jackson, Mississippi, and he would have to travel either way. When evaluated within the context of the scope and length of this trial, the additional cost of gasoline and/or a few hotel rooms is slight in comparison to the whole cost of defense. This within-district transfer is a far cry from those the Fifth Circuit has deemed an abuse of discretion. *See, e.g. United States v. Garza*, 593 F.3d 385, 390 (5th Cir. 2010) (transfer to division over 300 miles away); *Lipscomb*, 299 F.3d at 338-39 (transfer to division over five hours away).

Additionally, Defendant has not provided the Court with a list of witnesses and their addresses. So, the Court has no means of assessing Gulfport's convenience for witnesses, although the Court suspects that numerous witnesses will have to travel regardless of where the trial is held. In fact, the Court recalls Defendant's counsel mentioning during a conference call that he had traveled out-of-state to meet with an expert witness, and Defendant's counsel specifically represented during a teleconference on April 23, 2020, that he needed to travel out-of-state to interview witnesses. Gulfport is on a major interstate highway corridor. Also, it is substantially closer to a major airport in New Orleans, Louisiana, and multiple airlines fly into Gulfport's own airport, making it more accessible for witnesses coming in from out-of-state than Hattiesburg. Moreover, as discussed below, many of the pharmacies, business entities, and alleged coconspirators listed in the Superseding Indictment are

from out-of-state.

Although Defendant asserts in briefing that all events relevant to the charges occurred in the Eastern Division, the Superseding Indictment refers to pharmacies in Hinds and Madison Counties, in this Court's Northern Division. It also refers to pharmacies in Sunflower County, Mississippi, and Davis County, Utah, which are in different Districts. Additionally, the Superseding Indictment refers to business entities located in Sunflower County, Mississippi; Ouachita Parish, Louisiana; Lubbock County, Texas; Walton County, Florida; St. Joseph County, Indiana; Carson, Nevada; Maricopa County, Arizona; and New Castle County, Delaware, which are all in other Districts. The Superseding Indictment also lists coconspirators in Madison, Hinds, and Lauderdale Counties, which are in this Court's Northern Division. It lists additional coconspirators in Ouachita Parish, Louisiana; Montgomery County, Maryland; Lee County, Mississippi; Sunflower County, Mississippi; Salt Lake County, Utah; Lubbock County, Texas; Palm Beach County, Florida; and Roanoke County, Virginia, which are all outside this District. Therefore, while Defendant's actions and other events relevant to the charges may have occurred in the Eastern Division of this Court, it appears likely that many events relevant to the charges occurred outside the Eastern Division and perhaps even outside the District.

Finally, Defendant argues that the Court impermissibly considered the jurors' convenience. The Court's consideration of juror convenience is directly related to the "prompt administration of justice," which the Court must consider under Rule 18. It

6

is simply a practical reality that the longer a trial is, the more likely it is that jurors will be dismissed along the way, whether because of sickness, personal emergencies, misconduct, or other circumstances outside the Court's control or foresight. In the Court's opinion, the chance of jurors being dismissed is heightened in this case because 1) it is going to be a very long, difficult trial, addressing complex subject matter beyond the experience or knowledge of most jurors; 2) it is likely that the risk of contracting the novel coronavirus will remain, to some degree, after shelter-in-place orders and social-distancing measures have been discontinued, increasing the likelihood of juror sickness; and 3) the likelihood of jurors wanting and/or needing to be dismissed is likewise greater because of the current circumstances in our state and, indeed, the entire country. In short, the Court did not consider juror convenience for its own sake. Rather, the Court considered the practical difficulties of seating and keeping a jury for a month-long trial in our current – indeed, in any – circumstances.

In summary, this Court is not a buffet line in which Defendant gets to pick and choose the division in which he's tried and where his jurors come from, based on what he deems most advantageous. The Court has selected the division in which it believes Defendant will get the fairest and most efficient trial, with the least chance of a mistrial. Defendant has not demonstrated that the Court's selection was an abuse of discretion, or that the purported inconvenience to him or his witnesses outweighs the Court's concomitant concern for the prompt administration of justice. In fact, Defendant has not offered any evidence whatsoever, whether in support of his

7

original motion or the current one. Nor has he cited any law in support of his request that the Court give him a jury pool drawn from two of this District's four divisions, rather than the entire District or a single division.

The Court **denies** Defendant's Motion for Reconsideration [94]. Defendant's trial will be held at the United States Courthouse in Gulfport, Mississippi, with a Southern Division jury.

SO ORDERED AND ADJUDGED this 23rd day of April, 2020.

/s/     Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE